519-0057, Portfolio Recovery Associates v. Darnell, 519-0058, Portfolio Recovery Associates v. Darnell, 5-19-0059. These cases are consolidated. It's Case 5-19-0057. Counsel, ready to proceed? Good afternoon, Your Honors. May it please the Court. My name is Avanti Bhikhani. I, As a bit of background, these cases began as collection actions filed against LaToya Lee and Shirley Darnell. Your Honors, we will refer to the Apple Lees as debtors, as we did in PRA's briefing and for ease of discussion. In response to PRA's collection actions, the debtors filed class action counterclaims, alleging that PRA did not only account to issue and could not prove this fact. PRA moved to compel arbitration, and as Your Honors know well, the trial court struck this motion with prejudice as an initial sanction. We are here today seeking reversal of the lower court's rulings. One, striking PRA's motions to compel arbitration, and two, awarding the debtors' counsel fees and costs of more than $120,000, all as a first noncompliance. Specifically, we ask Your Honors to find that PRA did not violate any discovery rules or orders, and therefore, no sanctions are warranted. In seeking this finding, we understand that all parties need to do better moving forward with respect to our communications regarding discovery sought and provided, as well as to work together to move the litigation forward. If this Court finds that PRA did violate a discovery rule or order, Your Honors should determine that the trial court clearly abused its discretion when it sought to punish PRA by, one, striking PRA's motion with prejudice as an initial sanction and without notice, and two, failing to provide PRA the opportunity to review, much less challenge, any documentation in support of the claimed fees and costs. The trial court sanctions order is appealable pursuant to Illinois Supreme Court Rule 307A1 and the subject sanctions order is intertwined with PRA's motions to compel arbitration and appealable under Rule 304A. Turning to our first argument, pursuant to Illinois Supreme Court Rule 219, and as analyzed in Shumanofsky v. General Motors Corporation, a just order of sanctions is one which ensures both discovery and a trial on the merits. In reviewing the trial court's imposition of sanctions for clear abuse of discretion, this Court is to examine the six factors set forth by Shumanofsky. Importantly, in that case, the Supreme Court noted in reversing the lower court sanctions order that General Motors did not timely seek the evidence at issue and did not timely object to the plaintiff's discovery efforts. Your Honors will see similar facts emerge here as we discuss the six factors that a trial court is to use in determining what starting with the timeliness of the debtor's objection to PRA's evidence. On October 30, 2017, PRA served its first set of supplemental discovery responses. Prior to even reviewing these, the debtor filed a motion to compel discovery relating to the continued depositions of PRA's witnesses and the very discovery objections that PRA sought to cure in its supplemental responses. The Court heard the debtor's motion to compel discovery in January 2018. Importantly, the Court addressed the party's obligations moving forward and specifically stated, Your Honors, this is the January 2018 hearing transcript at R93 in the record. On page 47, okay, Mr. Cronin, the debtor's counsel, will amend with regard to 4, number 4, because I can see how Mr. Lohr, PRA's counsel, would read it without that context to maybe mean something else. The Court continued on page 48, put it this way, I would direct your client to answer within the scope of the issue of arbitrability, okay? If the counter plaintiffs have an issue with your answers as you've limited them, then they can file a motion to compel. The Court continued on page 50, then you can provide answers to those questions in that limited scope. And finally, again on page 50, so given the parameters of that order being entered, I'm going to assume that you can at least have a starting point and we can go from there. On March 8, 2018, PRA served its second supplemental discovery responses, producing 577 pages of documents. The debtors did not object to these responses until more than eight months after the responses were served. Notably, these objections came in the form of the motion for sanctions that we are here on today. Indeed, between March and November of 2018, the only discovery that the debtors saw in this case was the deposition of a Citibank witness, whom PRA agreed to make available. It should be noted that Citibank and Comenity Bank are not parties to this litigation. The debtors had several occasions to raise these objections with the trial court. At the March 2018 hearing, wherein PRA informed the Court that it had produced supplemental responses in compliance with the Court's January 2018 order, or at the May or October 2018 status hearings, the debtors did not do so. The following three factors can be analyzed together. The nature and prejudicial effect of the evidence PRA offered, and the debtors' surprise. The debtors now claim prejudice and surprise, relying upon PRA's production of communications with the creditors produced in the spring of 2019. However, consistent with this Court's ruling upon the debtors' second motion to supplement denying this motion, the trial court did not review, much less rely upon, these communications in coming to its sanctions order. In their counterclaims, the debtors alleged that PRA lacked certain documents, such as purchase agreements, bills of sale, that would show that PRA had purchased the rights to these accounts and that PRA, therefore, had a right to compel arbitration. In responding to these allegations, PRA produced over 1,100 pages of documents to refute these claims and to support its right to compel arbitration. Accordingly, it would be nonsensical for the debtors to now allege that production of the very material that they saw as proof of PRA's position is either prejudicial or came as any surprise. Notably, the debtors have not claimed any to respond. On page three of her order, she says, at oral argument, counsel for the portfolio admitted that they had only recently begun searching for communications between their client and the third parties involved, including those communications related to testifying witnesses, despite the fact that the request for such information had been made in September 2016, and this Court had ordered the production of the same on January 18, 2018. This Court also notes that portfolio responses for discovery from October 2017 and March 2018 were both verified by portfolio as being complete, and portfolio failed to provide a reasonable explanation to the Court as to how thousands of additional pages of documents were suddenly discovered and produced on December 21, 2018. How do you respond to that? Yes, Your Honor. I'll unpack each of those representations in order of how Your Honor cited them. First, Your Honor, I read from the Court's order, January 31st of 2018, and it did not at any point state that it had just started doing so. PRA's counsel also explained the sheer volume of documents that it was dealing with, and because of the number of communications between PRA and these creditors, many of which were unresponsive and had nothing to do with this litigation. So PRA had already started the process of producing these documents. And to cover the second point that Your Honor made from the Court's ruling, that the Court had ordered the production of these communications in January of 2018. A close reading of the Court's transcript and the very short order that the Court issued on the debtor's motion to compel in January of 2018 reflects that the parties did not at all discuss these communications, and the Court did not order that they be produced. Turning next to, I want to address one more point there, Your Honors. It is true that in the debtor's discovery request, the request encompassed these communications. PRA repeatedly objected to production of these communications as irrelevant and outside the scope of the limited scope of discovery that existed until January of 2019 in these cases. And finally, Your Honors, the Court makes a point to say, how is PRA now producing these hundreds of documents? Where did they come from? Why weren't they produced before? Your Honors, in January of 2018, the Court made a point to say, how is PRA now producing these documents? Where did they come from? Why weren't they produced before? Your Honors, in January of 2018, the debtors filed a motion for sanctions and abandoned all prior discovery requests. The debtors refused to allow depositions to proceed in these cases, much less showed an intent to pursue that discovery themselves. Regarding PRA's good faith in offering this evidence, this can be broken up into PRA's compliance with discovery PRA acted in good faith when it offered not only its own testimony and evidence, but that of the third-party creditors. With respect to depositions, PRA produced two witnesses for depositions. Additionally, PRA offered to make creditor witnesses available for deposition on two separate occasions. In October 2017, the debtors sought leave to take the supplemental depositions of PRA's witnesses. Ultimately, the debtors abandoned this request. In fact, the debtors chose not to take any depositions, including the creditor depositions, despite PRA's proposals for such in January and February of 2017. PRA first noticed the creditor depositions set to take place just a few hours later. Months later, in October 2018, the debtors requested that PRA make arrangements for the deposition of a Citibank witness. In their request, the debtors stated, after we have taken that deposition, we can agree on a briefing schedule for your amended motion to compel arbitration. PRA served supplemental projections on October 30, 2017, March of 2018, and again in December of 2018. In addition, the original creditor, Citibank, produced 800 pages or so of account documentation in December of 2018. PRA complied with Illinois Supreme Court Rules 213I and 214D by consistently supplementing its discovery responses and its productions, along with supplemental responses, submitted supplemental document productions. PRA also repeatedly sought clarification of the debtors' objections to any discovery responses served, as evidenced by the series of email correspondences between counsels for the parties in October of 2017. These correspondences evidence PRA's attempts to have meaningful Rule 201K conferences with the debtors' counsel. PRA also complied in good faith with the trial court's discovery orders. In January of 2018, the trial court ordered PRA to supplement its written responses, specifically within the scope of arbitrability and with respect to PRA's ownership of these accounts. In Appley's brief, they state that there are numerous 201K communications. Are we going to find those in the record? Your Honor, yes. You can find October 2017 communications reflecting 201K conferences at C904-909 and C939-954. There isn't much more than that in the record, which is one of the issues that we have here today. PRA complied with the January 2018 order on two separate occasions, in March and December of 2018. The debtors' first objections to PRA's March discovery came in the form of the instant motion for sanctions that was March 2018 discovery. Notably, the debtors did not bring a motion to compel as the six Cheminofsky factors weigh in favor of PRA and conclude that Rule 219C sanctions are not warranted here. Your Honor, turning to our second argument, even if, after weighing the six Cheminofsky factors, your Honor has determined that PRA unreasonably failed to comply with discovery rules or orders, the trial court, one, striking a PRA's motion to compel with prejudice and, two, awarding the debtors' counsel fees and costs, both as a first sanction and without notice, was a clear abuse of the trial court's discretion. This is so for at least five reasons. One, the court struck PRA's motions with prejudice as a first sanction. Two, the court did so without providing advance notice. Three, PRA was not a first sanction and did not warrant such a drastic and dispositive sanction. The trial court's sanction of striking PRA's arbitration defense with prejudice is effectively the same as a sanction entering default judgment because it summarily disposes of a defense without promoting either discovery or a trial on the merits. Appellate courts, including this Court, have analyzed sanctions disposing of a defense as the ultimate sanction. First, this was an attempt to undermine PRA's discretionary sanctions in order to first advance discovery. The Fourth District in United Excavating and Wrecking versus J.L. Roman Sons explained that striking pleadings is extreme and should only be done when the discovery stages of the litigation had completely degenerated to the point where the vitality of the litigation itself had been utterly compromised. The record here shows that discovery has not degenerated to that point. In fact, the court has not deterred the defense and has done so by suspending its motions to compel arbitration, making arrangements for third-party witness depositions, which the debtors ultimately chose not to take. As further evidence here, the parties had agreed to advance the litigation by scheduling an evidentiary hearing on PRA's motions to compel arbitration, again at the debtors' request. Next, this Court should follow its ruling in Walton versus dismissal at any time prior to the dismissal order. In fact, this drastic sanction was not even raised or discussed at the January 2019 hearing on the sanctions motion, let alone at any time prior to that hearing. A dismissal motion. You know, tell us about the, I mean, isn't there a distinction between dismissal of a motion and dismissal of a case? Yes, Your Honor. Here we are dealing with a motion to compel arbitration, which, as we know, is a denial or a grant is injunctive in nature. PRA pursued this motion to compel arbitration because the debtors had filed class action counterclaims. Should PRA be successful in this motion, the debtors would be forced to individually proceed with their claims. That is of enormous importance to PRA here. It will limit this class action to a two-debtor action, which is why it is so important that PRA be given the opportunity to pursue its contractual right here to compel arbitration. Further, PRA has evidence that it seeks to comply with discovery, even when the debtors themselves did not advance the litigation. Notably, this court has upheld sanctions striking defenses where the sanctioned party exhibits a pattern of repeated misconduct where there was no indication that the sanctioned party had any intention of complying in the future. Here, on the contrary, the debtors have, as the debtors have noted in their public brief, since the January 2019 order, PRA has produced approximately 10,000 pages of email correspondences between PRA and the creditors. This includes correspondences relating to the purchase of the pools of accounts, which include the debtors' accounts. This directly satisfies one of the issues raised by the debtors in their counterclaims. Next, the dismissal sanction was not tailored to promote discovery. It was instead imposed due to perceived delays and had the effect of punishing PRA rather than allowing it to continue complying with discovery. Although the trial court stated that it was entering sanctions as restitution for the debtors, it also stated that it believes a penalty would be appropriate in this case. Regardless of the trial court's intent, the practical effect here was to punish PRA. Further, the trial court explained that it was imposing the sanction due to perceived delays. This court has previously found this explanation as false. In this case, it must not allow personal frustrations to be the cause for dismissal. While the trial court may have been frustrated by the perceived delays here, as this court explained in Walton, such delays are not enough to warrant this type of dispositive sanction. Finally, the First District in Lacoste v. City of Chicago reversed the lower court's sanction of default judgment based on delayed discovery responses. In this case, the lower court's sanction of default judgment based on delayed discovery responses was not enough to warrant the dismissal. Judge, I believe there were at least two hearings on protective orders filed by Portfolio. So in addition to, we think, insufficiently responding to written discovery requests, they were frequently seeking to stop us from taking depositions and were filing motions for protective order to stop us from doing so. In fact, as a perfect example, they had two affidavits that attached affidavits to the motion to compel arbitration, which in this case is a dispositive, completely dispositive motion. If they win on the arbitration, the case seeks to be in the circuit court, which is the form they chose in the first place. They attached affidavits of people that are under their employ and then attached to those affidavits all the documents they would need to establish a foundation for, to prove the motion to compel arbitration, including the credit card agreement that includes the arbitration clause. We sought to depose those people, and this is a great example of the stonewalling we encountered. We sought to depose those people, and they filed a protective order to prevent us from deposing their affidavits. We went to the court about that. The court expressed surprise and said, no, of course they get to depose those people. And what they had tried to do, and I think when counsel mentioned we didn't want to depose the creditors, she means representatives of Citibank and Comanity Bank, who purportedly owned the original debts. What they had tried to do when we wanted to depose their affidavits is they said, we don't want to produce those people, but I'll tell you what, we'll go get the people from Citibank because they'll know all these documents. They can establish the business records exception to get these documents in, I think, knowing that they could not do so. We said we don't want to depose the people you want us to depose. We wanted to depose your affidavits. We can deal with the Citibank people later. We're entitled to do that. They deposed it. This is an example of a discovery issue in addition to the written discovery that was addressed by the court. The court said, no, we're going to depose those people, and guess what we found out? We deposed someone named Meryl Triano. She's the affidavit that tried to lay a foundation for all the documents. The court found that every single affidavit in her affidavit that they tried to keep us from knowing about, she didn't have personal knowledge of it, every single one except for her name. And she attempted to lay a foundation for all the documents they would need to establish. Now, keep in mind while they're trying to stop us from taking these depots, they also keep filing amended motions to compel and trying to set it for hearing. Was she an employee of Portfolio or Citibank? Of Portfolio, Your Honor, if I wasn't clear, I'm sorry. Of Portfolio, which is why we wanted to take her deposition so badly. The court struck her affidavit, finding she had no personal knowledge, and, of course, correspondingly struck every single document that was attached to her affidavit, including the credit card agreement. And so you'll see in our motion, I'm sorry, in our briefing, we only addressed it briefly, but this first part of the sanction, the striking of the motion to compel arbitration, is moot. The document that they based their rights arbitration on has been stricken from the record. And the applicant who tried to lay foundation for it, her affidavit has been stricken from the record. And subsequent to this, they've changed their underlying complaints to be on what's called an account stated, which is a noncontractual remedy. So they've withdrawn the document that contains the court arbitration clause from this case. And I would say that should cause you to question what we're doing here, wasting your time for. If we go back there, if you were to remand and disagree with the court striking that document, we would go back and we wouldn't be dealing with it anyway. And we would proceed on the merits, which is what we want to happen. That's all we're asking for here. We want to go back to the court and proceed on the merits of their underlying debt collection cases and our counterclaims. And they don't want that to happen. And there's a reason for that. So beyond that, that's an example. There was another protective order that tried to keep us from taking other debt positions. The other big hearing on discovery was a motion to compel. A motion to strike that lady's affidavit, who introduced lots of relevant documents. And so that was effectively a discovery motion, too. And then after that, they filed an extensive motion to reconsider, including all those things. And that was also ordered and briefed, just argued and briefed extensively. Finally, we had the sanctions hearing. And you'll see from the transcript, that's also very extensive. And Judge Gomrig had her finger on the pulse of this case. And I think you can tell that when you read that transcript and when you read her order. This was not a flippant, I think this has been taking too long, so you should be sanctioned. She knew everything that happened there. And she discussed it at length in the transcript. I'll suggest to you the transcript tracks pretty well in the order, but it's, of course, more extensive. We were there for a longer period of time. And it points out the overarching strategy of portfolio, which was this. File the motion to compel arbitration. Try to force a hearing on it before they get documents and get to depose our people and find out we can't prove it. And then they would try to block us from discovery. The court would give us an inroad into discovery. Then they would file an amended motion to compel arbitration. These were giant documents. You can see them. And then hidden in between these amended motions would be new affidavits of new affidavits and new declarants. Hoping we wouldn't see them, it wouldn't get to depose them. And this process happened three times. We get to depose the affidavits. Fine. Then they file a new motion, try to set up for hearing in two weeks, and try to force that to happen. So, Judge, at the time of the sanctions hearing, I believe that the matter was set for evidentiary hearing on the motion to compel arbitration in two weeks. At that time, we had been attempting to get discovery for two years and had been stonewalled every step of the way. You'll see in the transcript and in the order, at that hearing, Judge Gomrich says, wait a minute, I ordered you to produce these communications with Citibank. And here's why. All these applicants, lots of them, were from Citibank and Comenity Bank. Those are the original creditors. We said, you keep getting affidavits from these people. You must be in communication with them. And there's a transcript where Ms. Bacane says, I have not been in communication with them. And, Judge, I can tell you, we now have 13,000 pages of e-mails that show unequivocally that they were. Now, Judge Gomrich didn't know that when she granted the sanctions. But it shows why we've been prejudiced because if they had been able to force that evidentiary hearing to have gotten rid of this case, we would have never known that. And we're effectively deprived of any of that information, the opportunity to conduct any reasonable discovery whatsoever. And after three years of litigating, that evidentiary hearing was two weeks away and we were still in that same boat. Well, we just started looking for it. We'll get it to you sometime. And there is a line. I'm sorry. Yeah, I'm sorry, counsel. What about this argument that, look, sanctions were going to be imposed, the court was required to give progressive sanctions, and, you know, you litigated. You're going to do that as a first sanction and law prohibits us from the court trial, but we're doing it. What's your response? Judge, I agree with you. I think you might have suggested it, and I think the case law supports it. This is not a death blow. This is not striking somebody's pleadings such that the case goes away and you move to a trial on damages. I mean, that's kind of the traditional what you see. Somebody strikes a defendant's pleadings and you have a trial on damages, and that's – I can understand how that can be draconian but often warrants it. Here, all we're talking about is a motion to dismiss, literally. They filed underlying lawsuits. They get to proceed on those. We get to proceed on our counterclaims. All that has happened is that a motion to dismiss on an arbitration clause that's no longer in the case has been stricken. They have preserved every other defense they possibly have to our counterclaims. And so it is not extreme. It is – there's a reason they keep representing it like it blew up their whole case and took away all their defenses. I'd say that's a desperate argument because it's just simply not true. It was a motion to dismiss on a single issue that wasn't that issue at all when they filed their first – the underlying cases. Judge, with regard to the notice issue, I struggle with how to deal with that because we attempted to get discovery for over two years in this case, and we were diligent about it, as the record shows. There was lots of work. Just look how big the record is. The record is that big, and the only thing that was ever argued about ever was getting discovery on a simple motion to dismiss. That's how much work was done to try to get that accomplished, and we were never able to do so. And so to say they didn't have notices is disingenuous, I believe. We had motions to compel in January 2018. We argued constantly about the scope of discovery. They originally tried to prevent any discovery. They filed protective orders constantly to try to prevent us from deposing people. We fought about that. We argued about it. The court was absolutely aware, and they were certainly on notice, that we were very angry about it, and we constantly communicated with them about it. So they were on notice. And I think you're on notice when a court compels you to produce documents and produce people for deposition multiple times, and you flatly refuse to do it. They know the rules of discovery. They know what the court said. I think you're on notice when that happens. With regard to it being the first sanction, Judge, again, we were two weeks away from the subject evidentiary hearing. That was, at that point, effectively a trial on the merits, because if they were successful in that regard, the case completely goes away to an arbitrator. But it goes away from the court system and certainly deprives my clients of the right to their counterclaims. And the legislators saw fit to give these counterclaims specifically to debtors when debt collectors have abused their position. That's all we've done. This isn't a creative lawsuit. These are pretty standard counterclaims to debt collection cases. And so the only sanction at that point that would have made any sense, and it was narrowly tailored and the court talks about that, was striking this one simple motion that Bill had amended four times to try to introduce evidence and prevent us from conducting discovery about that evidence. With regard to the issue of delays, Judge, I think it goes without saying. The case is three years old. We conducted discovery for three years or attempted to on one single issue. And we were at the precipice of trying that issue. And we still didn't have, I mean, almost anything that we were supposed to have. Judge, I'd like to address the fees for a second. The big issue with the fees seems to be, and that was our affidavits. So Judge Gomerk had said, submit affidavits of the fees for the work that you've done to try to collect this discovery. And we did so. Me and Mr. Cates both submitted affidavits from our firms. At my firm, two lawyers worked on it, and Mr. Cates' firm, two lawyers worked on it. The total fees were approximately $120,000 for three years of work for four lawyers. We signed affidavits, which is what Judge Gomerk told us to do. Judge Gomerk reviewed those affidavits and said, I find these affidavits to track the language of the order, and I find them to be credible. And he said he was inclined to award them. And there was some objection by portfolio that said, well, we think we're entitled to underlying documentation, bills or whatever. And Judge Gomerk said, well, I might be willing to consider those in camera. And we said, Judge, we think that there might be work product issues with that and privilege issues. But, of course, we're happy to submit those, and we did. And we submitted further documentation, underlying documentation to support the affidavits to the judge. And he said at that hearing, it's in the transcript. I don't want to misrepresent it, but spitballing it, what he said was, I'm going to look at it first. I might be willing to share it with opposing counsel, but I want to look at it and consider those privilege work product issues. We submitted it as ordered, and a month went by. And portfolio never asked to see it. They never formally moved the court to see those documents at all. And they never objected to our affidavits, anything being wrong with those. Over a month later, Judge Warner issued those attorney's fees. And he entered an order that said, the court finds that it is satisfied that the request for attorney's fees, costs, and expenses submitted by attorneys Cronin and Cates are reasonable under Illinois Supreme Court Rule 219C, within the scope of the fee award sanctions order entered on January 31st, 2019, and adequately substantiate or distinguish between fees and costs in the order. So the cases that counsel has cited are incredibly distinguishable. Their argument is, well, it was an abuse of discretion because we didn't get to see it. And make no mistake about it, Judge, the standard here for both of these issues is abuse of discretion. You have to find that no reasonable judge would have done what either Gomerick or Judge Warner did here. And their dispute is that because Judge Warner reviewed this documentation in our affidavits and didn't share some of that with them, even though they didn't formally ask for it, that constitutes an abuse of discretion. That means you should overturn this order and his findings, that what he reviewed was reasonable, and track the language of the sanctions order. And I don't think that they've met their burden at all to establish that. Thank you. Thank you, Your Honors. I will just address a few of the points that opposing counsel raised. First, opposing counsel stated that the motion to file arbitration was just a simple motion to dismiss. This court disagreed in Custer v. Zero Flow Products, holding that a dismissal order such as this one, disposing of a defense completely, is the ultimate sanction. Here, PRA was seeking to enforce its contractual right to compel arbitration, and the court summarily denied it the right to do so. Further, regarding notice, I believe opposing counsel said he believes that notice was provided here. However, this court in Walton v. Doug Morton, which we mentioned earlier, reviewed the trial court's sanction of dismissing the plaintiff's action with prejudice for repeated continuances of a trial date and discovery closure deadline. This court ultimately held that the trial court abused its discretion in imposing such a dismissal sanction, noting that there was nothing in the record to indicate that the plaintiff had been notified at any time prior to dismissal that such a strong sanction would be imposed. Counsel's argument sounded a lot like the appellee's brief here. There are, I don't believe that counsel cited to any portion of the record, and this is similar to the debtor's brief where it's wholly lacking with respect to supporting the statements that counsel made here to your honors today. Counsel raised these motions for protective order repeatedly. Those aren't at issue here today. Those are in the record. And very importantly, pursuant to one of those very motions that PRA brought to limit discovery, the court limited discovery to arbitrability only. That was a focal point in the case, which Judge Gomrick, in her January 2018 hearing, reinforced, simply expanding the scope to include PRA's ownership of the accounted issue, which PRA had already produced evidence of. Counsel also made several representations regarding witnesses that PRA did and did not offer. PRA never had, did nothing but offer Mistriano and its declarants for depositions. There was one declarant that had since left PRA, which is why PRA offered to make Mistriano available for both, two of the three underlying collection cases. One of your honors raised the point of 201K letters, and that was a very important point. Counsel was unable to direct any of your honors to a portion of the record where you would find any in-person meetings or these phone calls discussed in any manner. And we can tell you, as officers of the court, that prior to this January 2019 sanctions hearing, primarily the parties discussed discovery via email, and that was pursuant to the debtor's request. You will see those correspondences in the record, and I had directed your honors to that during our prior argument. Counsel, of note, does not explain to your honors why the debtors are not interested in taking the creditors' depositions. Here, PRA has offered not only its own evidence and material in support that it owns these accounts and that arbitration can be compelled. It also offered the debtors' evidence and their declarations in support. Yet, counsel repeatedly refuses to take the depositions of these individuals, instead seeking irrelevant discovery. A few final points, your honor. Counsel mentioned that I mentioned only one of the interrogatories discussed in the January 2018 hearing. There were exactly three interrogatories discussed before the court ordered the parties to try and work out discovery amongst themselves. No more than three. What about counsel's point that you didn't ask to see those attorney's fees? Yes, your honor. I'm glad you mentioned that. You will find in the record two things. PRA's motion to clarify the scope of the court's January 2019 order, and also PRA's responses to the debtors' counsel's affidavits. And both of those are formal, as formal as you can get, requests for PRA to be able to review and also challenge the debtors' counsel's invoices. I do not know where that representation is coming from. I believe that's also reflected in the transcript hearing with Judge Horner, where we ask the court, we basically plead with the court to provide those invoices to us. And we say that, of course, they can be redacted to remove any privilege. Your honor, on that point, I want to mention that the affidavits stated that collectively, counsel put in 343 hours of work. It's effectively two full months of work into their motion for sanctions and related discovery efforts. Because of this, we certainly pleaded with the trial court to allow us to see the records, to be able to challenge the scope of these fees, and to be able to challenge the reasonableness of any task or time provided. Counsel, I'm out of time. Thank you. Thank you, counsel, for your arguments. The court will take this matter under advisement and then the decision is yours. At this time, the court will take a brief break and then we'll come back for the case at 7 or 2 o'clock.